IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| MICHAEL JON KOELE, ) | |
| ) | Bankruptcy No. 16-00971 |
| Debtor. ) | |
| ) | |
| W.D. LARSON COMPANIES ) | |
| LTD INC., d/b/a ALLSTATE ) | |
| PETERBILT GROUP, ) | |
| ) | |
| Plaintiff, ) | Adversary No. 16-09045 |
| ) | |
| v. ) | |
| ) | |
| MICHAEL JON KOELE, ) | |
| ) | |
| Defendant. ) | |

## TRIAL RULING

This matter came on for trial on August 17, 2017 in Sioux City, Iowa. Wil Forker appeared for Michael Jon Koele ("Debtor"). Brooke Van Vliet and William Topka appeared for the W.D. Larson Companies LTD ("W.D. Larson"). The Court heard testimony and received evidence. The parties filed post-trial briefs in lieu of closing arguments. The case is ready for decision. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## STATEMENT OF THE CASE

Debtor owes W.D. Larsen money on a personal guarantee. W.D. Larsen argues that this debt is not dischargeable because it was obtained by fraud or

misrepresentation. W.D. Larsen argues that, when Debtor signed the personal guarantee, he did not intend to honor it. Debtor argues that he did intend to honor the guarantee when he signed. The Court agrees with Debtor.

## FINDINGS OF FACT

W.D. Larson owns and operates numerous stores that sell parts and services for semi trucks and trailers in an eight-state area. Debtor owned and was doing business as Koele Trucking, Inc. ("KTI"). KTI's primary business was hauling fuel as a part of the then-booming oil production industry in North Dakota. In the course of its business, KTI purchased parts and service at one of W.D. Larson's stores.

On February 14, 2014, Debtor applied for a credit account with W.D. Larson. Debtor, along with assistance from a W.D. Larson employee, filled out a credit application. That application included information about Debtor and KTI—ID numbers, references, contact information, ownership, and estimated revenue. Debtor stated that he owned 60% of KTI and his wife owned 40%. This was not true. Debtor actually owned 50% of KTI and his wife owned 50%. Debtor did not remember the exact ownership percentage when he filed out the application on the spot that day.

As part of the credit application, Debtor also signed a personal guaranty. Without Debtor's personal guaranty, W.D. Larson would not have approved his

credit application. A W.D. Larsen representative testified that, had W.D. Larson known that Debtor owned only 50% of the company they would have also required his wife to sign a personal guaranty.

W.D. Larsen approved Debtor's credit application. KTI began buying parts and services on credit. KTI accumulated $45,075.99 in charges. Subsequently, the fuel hauling business in North Dakota slowed substantially. KTI failed to repay its debt to W.D. Larsen. In addition, KTI failed to repay other debts. In general, KTI's business was built on an expectation that the North Dakota oil boom would continue. It did not continue, and KTI failed.

W.D. Larsen sued KTI and Debtor in Minnesota state court. In his answer to W.D. Larsen's complaint in that action, Debtor denied entering into a personal guaranty with W.D. Larson. His answer said that he "den[ied] . . . enter[ing] into a personal guarantee with Plaintiff"; that he "signed the guaranty on behalf of Koele Trucking, not for himself personally"; that he is not "personally liable for any such amount"; and that he is not "personally liable for any alleged breach of contract." He also denied having "promised to personally guaranty any such alleged contract."

On July 29, 2016, Debtor filed this Chapter 7 bankruptcy. On November 11, 2016, W.D. Larson filed this adversary. W.D. Larsen asks the Court to determine that its $45,075.99 claim is not dischargeable. W.D. Larsen argued that this debt is

not dischargeable under § 523(a)(2)(A) because it was obtained by false pretenses, false representations, and actual fraud. W.D. Larsen also argued that Debtor's debt was not dischargeable under § 523(a)(6) as a debt for willful and malicious injury. After trial, W.D. Larsen withdrew its claim under § 523(a)(6).

## CONCLUSIONS OF LAW AND ANALYSIS

W.D. Larsen seeks to have its debt excepted from Debtor's discharge under § 523(a), which provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a). "In the Eighth Circuit the same five factors are applied to determine whether a debt is nondischargeable under 'false pretenses,' 'fraud' and 'false representation.'" Am. Nat'l Bank v. Lewis (In re Lewis), Bankr. No. 15-02519-ALS7, Adv. Pro. 16-30011-ALS, 2017 WL 2274946, at *2 (Bankr. S.D. Iowa May 24, 2017). The creditor must show:

> (1) The debtor made a representation; (2) The debtor knew the representation was false at the time it was made; (3) The representation was deliberately made for the purpose of deceiving the creditor; (4) The creditor reasonably relied on the representation; and (5) The creditor sustained the alleged loss as the proximate result of the representation having been made.

Id. (quoting R & R Ready Mix v. Freier (In re Freier), 604 F.3d 583, 587 (8th Cir. 2010)).  The party advocating for nondischargeability must prove these elements by a preponderance of the evidence.  Id.  "Exceptions to discharge under § 523(a) are to be strictly and narrowly construed against the creditor and liberally in favor of the debtor to facilitate the debtor's fresh start."  Hernadez v. Sulier (In re Sulier), 541 B.R. 867, 877 (Bankr. D. Minn. 2015).

Here, Debtor represented that he personally intended to repay KTI's debt to W.D. Larsen when he signed the personal guarantee in the credit application. W.D. Larsen relied on this representation when it extended parts and services to KTI on credit.  The parties primarily dispute whether Debtor's personal guarantee was fraudulent.  In particular, they dispute whether Debtor intended to pay his personal guarantee when he signed the credit application.  W.D. Larsen argues that Debtor knew that his representation that he would personally guarantee the debt was false when he signed the personal guarantee.  Debtor argues that he intended to honor the personal guarantee when he signed the credit application.

A promise to perform in the future made without the intent to perform constitutes fraud under § 523(a)(2)(A), but only "if the debtor possessed no intent to perform the future act at the time the promise was made."  Id. at 879.  "A representation that is made under circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth satisfies the

5

knowledge requirement." Id. (internal quotation marks omitted) (quoting Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999)). "Failure to fulfill a contractual obligation by itself does not establish a misrepresentation for purposes of § 523(a)(2)(A)." Rezin v. Barr (In re Barr), 194 B.R. 1009, 1018 (Bankr. N.D. Ill. 1996).

Courts assess fraudulent misrepresentation "using a totality of the circumstances approach to discern the debtor's subjective intent." Whitcomb v. Smith, 572 B.R. 1, 16 (B.A.P. 1st Cir. 2017). There is no misrepresentation if a debtor makes a promise with the intent to keep it but later changes his mind or refuses to carry out that intention. Palmacci v. Umpierrez, 121 F.3d 781, 787 (1st Cir. 1997). To show intent to deceive, the creditor must prove that the debtor acted with the intent to induce the plaintiff to rely on the misrepresentation. In re Sulier, 541 B.R. at 882.

W.D. Larsen argues that the doctrine of judicial admissions controls this issue, citing E. States Life Ins. Co. v. Strauss (In re Crawford), 274 B.R. 798, 804–05 (B.A.P. 8th Cir. 2002) ("Statements contained in a party's pleadings are binding on that party, and are considered judicial admissions, unless the statements are withdrawn or amended."). W.D. Larsen argues that Debtor's answer in the Minnesota lawsuit—in which he denies, among other things, that he entered into a personal guaranty and that he is personally liable—constitutes a judicial admission

6

that that Debtor did not intend to honor his personal guarantee when he signed the credit application.  W.D. Larsen argues that, under the doctrine of judicial admissions, Debtor cannot now assert that he intended to honor the guarantee.  Debtor argues that that pleadings are not clear and do not bind this Court's findings.  The Court finds that the doctrine of judicial admissions does not apply.

First, the doctrine does not apply here because Debtor filed the relevant pleading in another court in another proceeding.  State Farm Mut. Auto. Ins. Co. v. Worthington, 405 F.2d 683, 686 (8th Cir. 1968) ("[J]udicial admissions are binding for the purpose of the case in which the admissions are made including appeals.  This does not make the same judicial admissions conclusive and binding in separate and subsequent cases.").  Where the pleadings are filed in a separate action, "they are ordinary admissions that may be considered by the factfinder in this matter and are not binding judicial admissions."  Corelink v. Phygen, LLC, No. 4:13-CV-1842 CEJ, 2014 WL 7140442, at *6 (E.D. Mo. Dec. 12, 2014) (citing Pagett v. Allied Mut. Ins. Co., No. 2:05 CV 00042 ERW, 2006 WL 2246428, at *3 (E.D. Mo. Aug. 4, 2006)).

Second, even if the doctrine of judicial admissions could apply here, it would not.  "[A] judicial admission must be deliberate, clear, and unambiguous." Acciona Windpower N. Am., LLC v. City of W. Branch, Iowa, 847 F.3d 963, 968 (8th Cir. 2017) (internal quotation marks omitted) (quoting Grandoe Corp. v.

Gander Mountain Co., 761 F.3d 876, 885 (8th Cir. 2014)). "A judicial admission . . . acts as a substitute for evidence in that it does away with the need for evidence in regard to the subject matter of the judicial admission." Warner Bros. Entm't, Inc. v. X One X Prods., 840 F.3d 971, 978 (8th Cir. 2016) (internal quotation marks omitted) (quoting State Farm Mut. Auto. Ins. Co. v. Worthington, 405 F.2d 683, 686 (8th Cir. 1968)).

Here, Debtor's answer in the Minnesota action set out legal conclusions about the effectiveness of the personal guaranty. Nowhere does it deliberately, clearly, and unambiguously state that Debtor did not intend to honor the guarantee when he signed it. The doctrine of judicial admissions does not apply here. Debtor's statements in his answer in the Minnesota action are simply "ordinary admissions that may be considered by the factfinder," Corelink, 2014 WL 7140442, at *6, and do not bar Debtor from arguing that he intended to honor the guarantee when he made it.

After reviewing all of the evidence, the Court finds that the totality of the circumstances shows that Debtor intended to honor his personal guarantee when he filled out his credit application. Most importantly, the Court found Debtor's testimony that he intended to honor the guarantee when he signed it to be credible. Debtor's business was going well when he filled out the credit application. He had previously done business with W.D. Larsen when he applied for a credit account.

Moreover, Debtor's trucking business, and his personal income, relied on his belief in the continuation of the North Dakota oil industry boom. Debtor did not anticipate the rapid decline of that industry when he signed the guarantee. He certainly did not anticipate the effect of that decline, which resulted in KTI's failure, his inability to pay, and this bankruptcy.

W.D. Larsen has not met its burden to show that Debtor obtained credit through false pretenses, fraud, or false representation under § 523(a)(2)(A). The Court holds that § 523(a)(2)(A) does not bar Debtor's discharge of his debt to W.D. Larsen.

## CONCLUSION

**WHEREFORE**, judgment is hereby entered in favor of Defendant.

Dated and Entered:  December 20, 2017

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE